**WESTERN CASUALTY & SURETY COMPANY, Appellant,**

v.

**NEWELL MANUFACTURING COMPANY, Appellee.**

No. 15858.

Court of Civil Appeals of Texas, San Antonio.

April 26, 1978.

Rehearing Denied May 24, 1978.

Richard C. Keene, Gray & Keene, San Antonio, for appellant.

W. N. Gremillion, Jr., House, Mercer, House & Brock, San Antonio, for appellee.

CADENA, Chief Justice.

Western Casualty & Surety Company, plaintiff, seeks reversal of a summary judgment in favor of defendant, Newell Manufacturing Company, in a suit in which plaintiff seeks recovery of $70,000.00 paid by it in settlement of a personal injury suit brought by Ernest Holub, against defendant, plaintiff's insured under a public liability policy.

The accident which was the basis for Holub's suit against defendant occurred on August 1, 1969, but, although defendant's president knew of the accident on the day it occurred, no notice was given to plaintiff, the insurer, until February 23, 1971, at which time the citation and accompanying petition in the suit by Holub against defendant was delivered to insurer.

Defendant does not contend that the notice given to insurer on February 23, 1971, satisfied the requirement that insurer be notified of the occurrence of an accident "as soon as practical." Instead, defendant insists that, under the circumstances of this case, insurer is precluded from asserting the defense of lack of timely notice.

Insurer received the citation in the Holub suit and acknowledged receipt by letter dated February 25, 1971, in which insurer stated that its records "would indicate" that receipt of the citation constituted the first notice insurer had received of the August 1, 1969, accident. After stating that it was "accepting" the citation and petition "under a strict reservation of rights," insurer, in this letter, informed defendant:

> If at any time we determine that there has been a contractual violation of the policy conditions, we reserve the right to withdraw upon proper notice to you. Further, we will instigate our initial investigation at once but our investigation is conducted under this reservation afore mentioned and any actions that we may take, either by way of investigation or by way of defense of the pending litigation, shall not be deemed an estoppel of the rights afore mentioned. Further, we must advise that we are requesting your complete cooperation during the investigation that we will hereinafter conduct. * * * Pending further notification from us in writing we will do any and all things to investigate and to protect your interests in accordance with the contractual obligation of the insurance policy.

A copy of this letter was sent to defendant's attorney, but the record does not indicate whether defendant or his attorney replied to the letter.

The Holub suit was set for trial and counsel for insured appeared on behalf of defendant. After a jury had been selected, Holub offered to settle his claim for $70,000.00. Insurer and defendant then entered into a written agreement, dated October 7, 1971, in which reference was made to, among other things, the mailing of the reservation of rights letter of February 25, 1971, the setting of the case for trial and selection of the jury, the offer of settlement

and the fact that insurer and defendant believed that acceptance of the offer would be to their mutual benefit. This preamble is followed by an agreement to the effect that any rights which insurer or defendant "may have in and under" the insurance policy and "by and under" the reservation of rights letter of February 25, 1971, are "preserved one to the other," and that insurer's payment of $70,000.00 to Holub in settlement of Holub's claim against defendant "shall not be deemed a waiver, estoppel or forfeiture of any of the rights" insurer "may have by virtue of its letter of February 25, 1971."

Insurer then paid Holub $70,000.00 in settlement of Holub's claim against defendant and then filed this suit against defendant seeking recovery of the amount paid by it to Holub.

■ It is generally agreed that the defense by an insurer of an action against the insured is incompatible with a denial of liability under the policy unless the insurer has taken appropriate steps to reserve the question of its liability.

■ The traditional mode of reservation of rights is the non-waiver agreement. This agreement may be in the form of an instrument executed by the insurer and the insured, or it may be evidenced by an exchange of letters. But the agreement may be inferred from the failure of the insured to reject the insurer's offer to defend with a reservation of rights. In this latter situation, the theory seems to be that, because of the relationship of the parties, the insured is under a duty to speak in response to the offer and that his silence amounts to consent.

Language can be found in some cases expressing the view that a unilateral offer by the insured to defend subject to a reservation of rights will be effective to preserve the rights of the insurer to assert policy defenses irrespective of the consent of the insured. *Associated Indemnity Corporation v. Wachsmith,* 2 Wash.2d 679, 99 P.2d 420 (1940). However, there are decisions stating that consent of the insured is required

if the insurer is to retain control of the defense while, at the same time, reserving the right to disclaim liability under the policy. *Hawkeye Cas. Co. v. Stoker,* 154 Neb. 466, 48 N.W.2d 623 (1951).

■ To a great extent, the conflict is only apparent. It would be a strange rule which would permit an insurer, merely by notifying its insured, to take over and control the defense of an action, without relinquishing its right to assert policy defenses, over the objection of the insured. There can be no doubt that the offer to defend subject to reservation of rights can be effective to protect the insurer even in the absence of an express consent or acceptance of the offer by the insured. The consent of the insured can be inferred from his conduct after receiving notice of the insurer's offer. If, with knowledge of the offer, the insured stands by, expressing no objection, and allows insurer to defend the action, there is no difficulty, under ordinary rules of contract law, in implying the consent of the insured to the offer. On the other hand, if the insured refuses to accept the offer of a defense under such conditions, and so notifies the insurer, insurer cannot stubbornly continue with the defense and still preserve its right to assert policy defenses. *Pacific Indemnity Co. v. Acel Delivery Service, Inc.,* 485 F.2d 1169 (5th Cir. 1973); 7A Appleman, Insurance Law and Practice § 4694, p. 546 (1961). If it were true that the consent of the insured to the defense of the action by insurer under a reservation of rights is not required, such a result could not be reached.

■ The provisions of a non-waiver agreement will be construed strictly against the insurer and will not be extended by implication beyond their exact terms. *Employers Casualty Co. v. Tilley,* 496 S.W.2d 552, 559 (Tex.1973). Thus, in *U. S. Fidelity & Guaranty Co. v. Bimco Iron & Metal Corp.,* 464 S.W.2d 353 (Tex.1971), an agreement that no action taken by insurer in investigating the accident would preclude the subsequent assertion of policy defenses was held not to include attempts by insurer to settle or compromise the claim, since

such attempts at compromise and settlement could not be considered part of the investigation.

We need not here decide whether, as defendant asserts, an insurer must, in order to prevent its being barred from asserting a policy defense when it undertakes defense of a claim against its insurer, deny liability *and* reserve its rights to assert such defenses. Compare Anno.: 81 A.L.R. 1326, 1327 (1932), where it is said that an insurer, by assuming and conducting the defense of a claim with knowledge of facts giving the insurer a defense, is precluded from asserting such defenses unless it disclaims liability *and* gives notice of its reservations of rights, with Anno.: 38 A.L.R.2d 1148, 1151 (1954), where the earlier annotation is cited in support of the statement that the right to assert policy defenses is lost if the insurer, with knowledge of facts giving rise to the defense, undertakes defense of the claim "without disclaiming liability *or* giving notice of a reservation of its rights." (Emphasis added.)

In this case, the insurer reserved, according to the language of the reservation of rights letter, the right to withdraw if the insurer determined, in the future, "that there has been a contractual violation of the policy conditions." However, the letter clearly states that the right to withdraw will be exercised only "upon proper notice to" the insured. "Proper notice to the insured" is to be given when the insurer determines that it has a policy defense and to exercise its right to withdraw. Withdrawal without such proper notice would not be in accord with the nature of the reservation.

■ Considering the fact that the insurer normally assumes full control of the defense, it is not unreasonable to require it to give proper notice of its decision to withdraw when it learns of the existence of a policy defense, or at least within a reasonable time thereafter, where it has assured its insured that such notice will be given. Absent such notice, the insured, who has been told that such notice will be given before withdrawal, has no reason to believe that a policy defense exists and will be asserted by the insurer. Where, as here, the right of withdrawal is, in the instrument drawn by the insurer, made dependent on the giving of proper notice, such notice should be given at a time when the insured can take proper measures to defend the suit himself, at least where the insurer, at the time it promises to give proper notice, has knowledge of all of the facts giving rise to the defense, or where it acquires such knowledge at a time sufficient to allow it to give the required notice without unduly prejudicing the rights of the insured.

■ This conclusion, which we limit to the situation where the insurer expressly agrees to give proper notice prior to withdrawal, is consistent with the general rule that an insurer cannot delay its decision to disclaim liability so long that the rights of the insured are prejudiced thereby. 7A Appleman, *Insurance Law and Practice* § 4693, at 530–32 (1962).

Here, insurer at no time gave to its insured "proper notice" that it had determined that there had been a breach of a policy provision by the insured and that the insurer was exercising its reserved right to withdraw upon proper notice. Here, for seven months during which insurer had knowledge of all of the facts, no such notice was given as promised. Insurer undertook the defense, its attorneys selected a jury, and an offer of settlement was received with no indication to the insured defendant that a determination of breach of the policy had been made and that insurer elected to withdraw. It certainly would have been grossly unfair for insurer, at that time, to notify defendant that it had decided to withdraw from the defense.

It is true that the letter of reservation states that no action which plaintiff might take, either by way of investigation or by way of defense of the suit, "shall be deemed an estoppel of the rights above mentioned." The only right "above mentioned" was the right to withdraw "upon proper notice."

■ At best, the reservation of rights letter is ambiguous, in which case it must

be strictly construed against the insured. The "right to withdraw" can reasonably be interpreted as referring to the "right to withdraw" from the investigation and defense of the case, rather than as a right to disclaim liability after the liability of the insured had been established. We adopt that interpretation, since any other interpretation would require that we resolve the ambiguity in favor of the insurer. Resolution of ambiguities in favor of the insurer does not comply with the requirement that so-called non-waiver agreements be strictly construed against the insurer.

If, at the time the second non-waiver agreement was made, while the jury which had been selected to hear the case was cooling its heels waiting for the presentation of evidence to begin, plaintiff had unduly delayed giving "proper notice" of the exercise of its right to "withdraw," it was then bound to defend the action and to pay off any judgment rendered against defendant. It was then too late to attempt to reserve its rights. The only right it had reserved had not been exercised. By that time, the insurer was bound, it had lost its rights to assert policy defenses, and, therefore, insurer had "waived" the prior "non-waiver." The second agreement was to the effect that payment of the settlement should not be construed as a "waiver" of any of the rights which insurer might have by virtue of the reservation of rights letter of February 25, 1971. The rights reserved by insurer under such letter were lost by failure to give proper notice, not by payment of the settlement.

The judgment of the trial court is affirmed.