PROVIDENCE WASHINGTON
INSURANCE COMPANY,
Appellant,

v.

A & A COATING, INC., Appellee.

No. 06–00–00015–CV.

Court of Appeals of Texas,
Texarkana.

Argued Sept. 14, 2000.

Decided Sept. 22, 2000.

Snow E. Bush, Jr., Snow E. Bush, Jr.,
PC, Longview, for appellant.

Vincent Lee Dulweber, Vincent L. Dul-
weber, PC, Longview, for appellee.

Before CORNELIUS, C.J., GRANT and
ROSS, JJ.

# OPINION

Opinion by Justice DONALD R. ROSS.

Providence Washington Insurance Company appeals from summary judgment granted in favor of A & A Coating, Inc. in the amount of $97,574.12, plus interest and attorney's fees. This judgment was for reimbursement after Providence refused to pay for the legal services of A & A in a prior suit.

A & A acquired a commercial general liability policy (insurance agreement) from the Western Alliance Insurance Company, a subsidiary of Providence, on November 16, 1988. The insurance agreement covered possible claims against A & A in regard to its steel pipe-coating operation from November 16, 1988 through November 16, 1989.

On March 24, 1994, A & A was named as a defendant to a lawsuit pending in a United States District Court in New Mexico styled *Gas Co. of New Mexico v. Cook Paint & Varnish, et al.* (New Mexico litigation). On May 26, 1994, Western Alliance agreed to defend A & A in the New Mexico litigation under a reservation of rights. Providence and Zurich American Insurance Group (liability provider to A & A after Providence) entered into an agreement to cover the defense of A & A. The law firm of Silva, Rieder & Maestas was retained to represent A & A in the New Mexico litigation, as were the services of Leonard Choate, Steven's Engineering Laboratories, and Kathy Townsend.

During the New Mexico litigation, the trial court issued a memorandum opinion on June 11, 1996, declaring that all claims against A & A before November 24, 1989, were barred by the statute of limitations. Providence relies on the memorandum opinion as justification for its refusal to reimburse A & A for the legal fees and services that are the product of this suit.

In a letter dated May 26, 1994, where Providence assumed the duty to defend A & A under a reservation of rights, notice was a requirement for termination of that defense. The district court found that Providence failed to exercise its reservation of rights by not giving notice of termination to A & A. Providence claims that A & A was notified of termination in a letter sent from Providence to the attorney for A & A on February 11, 1997. The New Mexico litigation was settled two days later. A Providence representative participated in the settlement conference by telephone. Providence then issued a check for $5,000.00 in contribution toward settlement.

Providence refused to pay the remaining balance for the legal work and other services rendered to A & A. A & A brought this suit and was granted summary judgment by the district court on November 16, 1999.

Summary judgment is proper when the movant establishes that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671 (Tex.1979); *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377, 379 (Tex. App.-Texarkana 1989, no writ). The question on appeal is not whether the summary judgment proof raises a fact issue with reference to the essential elements of the plaintiff's cause of action, but whether the summary judgment proof establishes that the movant is entitled to summary judgment as a matter of law. *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736 (Tex.1990). Because the movant bears the burden of proof, all conflicts in the evidence are disregarded, evidence favorable to the nonmovant is taken as true, and all doubts as to the genuine issue of material fact are resolved in favor of the nonmovant. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

An insurer's duty to defend is determined by the "eight corners rule," which limits review to the four corners of the insurance policy and the four corners of the plaintiff's petition. *Nat'l Union*

*Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997); *Tri–Coastal Contractors, Inc. v. Hartford Underwriters Ins. Co.,* 981 S.W.2d 861, 863 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). The insurer's duty to defend is not affected by facts learned before, during, or after the suit. *Tri–Coastal Contractors,* 981 S.W.2d at 863; *Am. Alliance Ins. Co. v. Frito–Lay, Inc.,* 788 S.W.2d 152, 154 (Tex.App.-Dallas 1990, writ dism'd). The duty to defend is determined independent of the parties' knowledge of the true facts. *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.,* 387 S.W.2d 22, 24 (Tex.1965); *Tri–Coastal Contractors,* 981 S.W.2d at 863. However, there are certain limited circumstances where extrinsic evidence beyond the "eight corners" will be allowed to aid in the determination of whether an insurer has a duty to defend. Extrinsic evidence may be used to assist in making judgments on whether insurance coverage exists. Such situations would be when deciding if the person sued is covered by the policy, whether the property in question is covered under the policy, and whether a policy contract exists. *See Tri–Coastal Contractors,* 981 S.W.2d at 863.

In the case before the court, the "eight corners rule" has no exceptions. There is no question as to whether insurance coverage existed. Both parties have stipulated that Providence is the responsible insurer for claims against A & A arising from the time period of November 16, 1988 through November 16, 1989. As no question exists with regard to the validity of insurance coverage, Providence undertook its duty to defend, under a reservation of rights.

■ An insurer may undertake an insured's defense and later deny coverage by reserving its rights, so long as the insured is advised that the insurer may use a policy defense to later void its duty to defend. *Am. Eagle Ins. Co. v. Nettleton,* 932 S.W.2d 169, 174 (Tex.App.-El Paso 1996, writ denied). The insurer properly reserves its rights only when it has a good-faith belief that the complaint alleges conduct that may not be covered by the policy. *Id.*

■ Providence issued a valid reservation of rights when it undertook the defense of A & A on May 26, 1994. The reservation said:

We will be assigning the defense of this cause to defense counsel and will inform you of the name, address and phone number of that attorney. We do, however, reserve the right to withdraw from the defense of your company in this cause upon reasonable notice to your company should it be determined that there is no coverage or any obligation to defend your company under the terms of its policies with us based upon any allegations that may be made in any further pleadings which are filed or based upon any investigation that we may conduct.

The crucial part of this reservation is the phrase "upon reasonable notice to your company."

■ When a defense is undertaken through a valid reservation of rights, the insurer may withdraw its defense when it becomes clear there is no coverage under the policy. *Katerndahl v. State Farm Fire & Cas. Co.,* 961 S.W.2d 518, 521 (Tex. App.-San Antonio 1997, no pet.). Providence relies heavily on the *Katerndahl* decision in support of its brief. Yet, the decision can be distinguished because it does not involve a notice requirement in the reservation of rights. The San Antonio Court of Appeals had previously decided a case that did involve a notice requirement in the reservation of rights. *See W. Cas. & Surety Co. v. Newell Mfg. Co.,* 566 S.W.2d 74 (Tex.Civ.App.-San Antonio 1978, writ ref'd n.r.e.). In *Western Casualty,* the court found that proper notice is to be given by the insurer when it discovers a valid policy defense and intends to withdraw. Withdrawal without proper notice is not in accord with the nature of the reservation of rights. *Id.* at 77. The insurer typically assumes control of the de-

fense, and when it assures the insured that notice will be given, it is reasonable to require notice when the insurer learns of the policy defense or soon thereafter. *Id.* If the insured has no such notice, there is no reason to believe that the insurer plans to exercise a policy defense. *Id.*

■ The court in the New Mexico litigation issued a memorandum opinion on July 11, 1996. As part of that opinion, the court found that all claims against A & A before November 24, 1989, were barred by the statute of limitations. Providence contends that notice of withdrawal was then given to A & A. On appeal from summary judgment, all evidence will be viewed in the light most favorable to Providence. *Nixon,* 690 S.W.2d at 548–49. The district court found that there was no evidence of notice. Although the evidence would be viewed in favor of Providence, there is no evidentiary dispute because Providence has failed to put forth any evidence of a notice of withdrawal. In its own brief, Providence states that "there is no summary judgment evidence as to the date of the notice."

The only evidence Providence produced and on which it relies for notice was a letter dated February 11, 1997, from Kenneth Ford to Benjamin Silva, Jr., who was the attorney for A & A. This letter expressed the view of Providence that the memorandum opinion had absolved it of liability, but it did not state that it was withdrawing from its duty to represent A & A. On February 13, 1997, Ford affirmed in a conference call with Silva that Providence was not denying its duty to defend A & A. The New Mexico litigation, with Ford attending the conference via telephone, was settled that same day. Providence then contributed $5,000.00 toward the settlement.

■ Viewing this evidence in favor of Providence, the district court was correct to render summary judgment for A & A. Even assuming the February 11 letter was proper notice of withdrawal from repre-

sentation, and ignoring the events of February 13, Providence still did not render timely notice. Providence waited until seven months after the memorandum opinion and until two days before the litigation was settled before giving what it now claims was its notice of withdrawal from defense of the litigation. In *Western Casualty,* a seven-month delay from the time the insurer knew of the valid policy defense and the rendering of notice that it was terminating its representation was a delay that was detrimental to the rights of the insured and thus ineffectual. The notice should be given at a point when the insured can still take appropriate measures to defend itself. *W. Cas. & Surety Co.,* 566 S.W.2d at 77. An insurer who expressly agrees to give notice before withdrawal cannot delay its decision to disclaim liability so long that there is prejudice to the rights of the insured. *Id.*

Providence failed to give notice to A & A of its intention to exercise the reservation of rights clause and withdraw from its duty to represent. The letter of February 11, 1997, indicated no intent of withdrawal, and even if such intent could be inferred, the seven-month delay from the possible policy defense to withdrawal was too long to give A & A ample time to undertake measures to defend itself. Providence did not uphold the notice requirement in the reservation of rights and is still bound by the agreement to represent A & A.

The judgment of the trial court is affirmed.