IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 04-0692
════════════
 
GuideOne Elite Insurance 
Company f/k/a Preferred Abstainers Insurance Company, Petitioner,
 
v.
 
Fielder Road Baptist Church, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Second District of 
Texas
════════════════════════════════════════════════════
 
 
Argued October 20, 
2005
 
 
Justice Medina delivered the opinion of 
the Court, joined by Chief Justice 
Jefferson, Justice 
O’Neill, Justice Green, and Justice Johnson.
 
Justice Hecht filed a concurring 
opinion, joined by Justice 
Wainwright, Justice Brister, 
and Justice Willett.
 
 
In this 
declaratory judgment action, we are asked to create an exception to the 
complaint-allegation or eight-corners rule. The eight-corners rule provides that 
when an insured is sued by a third party, the liability insurer is to determine 
its duty to defend solely from terms of the policy and the pleadings of the 
third-party claimant. Resort to evidence outside the four corners of these two 
documents is generally prohibited. 
The trial 
court, relying on evidence extrinsic to the policy and pleadings, declared that 
the insurer had no duty to defend the underlying claim against its insured. The 
court of appeals, however, reversed, concluding that because the circumstances 
of the case presented no reason to create an exception to the eight-corners 
rule, the trial court had erred in using extrinsic evidence to defeat the 
insurer’s duty to defend. 139 S.W.3d 384. We agree and, accordingly, affirm the 
court of appeals’ judgment.
 
I
GuideOne 
Elite Insurance Company issued a commercial general liability insurance policy 
to Fielder Road Baptist Church, effective March 31, 1993. The policy included 
the following liability coverage for sexual misconduct:
 
We agree 
to cover your legal liability for damages because of bodily injury, excluding 
any sickness or disease, to any person arising out of sexual misconduct which 
occurs during the policy period. We shall have the right and duty to investigate 
any claim ... and to defend any suit brought against you seeking damages, even 
if the allegations of the suit are groundless, false or fraudulent, and we may 
make any settlement we deem expedient.
 
 
The policy 
expired on March 31, 1994.
On June 6, 
2001, Jane Doe filed a sexual misconduct lawsuit against the Church and Charles 
Patrick Evans. In her pleadings, Jane Doe alleged that “[a]t all times material 
herein from 1992 to 1994, Evans was employed as an associate youth minister and 
was under Fielder Road’s direct supervision and control when he sexually 
exploited and abused Plaintiff.” The Church demanded that GuideOne defend it in 
the lawsuit and indemnify it for any judgment or settlement. GuideOne agreed to 
defend, but questioned coverage under the policy and reserved its rights to 
determine that issue at a later time.
A few months 
later, GuideOne filed this declaratory judgment action seeking the policy’s 
construction and a declaration that GuideOne had no duty to defend or indemnify 
the Church in the underlying sexual misconduct lawsuit. In this action, GuideOne 
sought discovery of Evans’ church employment history. The Church objected, 
asserting that GuideOne’s duty to defend should be determined from the pleadings 
and the insurance policy, without resort to extrinsic evidence. The trial court, 
however, declined to block the discovery request, and the Church thereafter 
advised GuideOne that Evans ceased working for it on December 15, 1992, before 
the GuideOne policy took effect.
After both 
parties filed motions for summary judgment, the trial court granted GuideOne’s 
motion, denied the Church’s, and rendered judgment declaring that GuideOne had 
no duty to defend the Church in the underlying sexual misconduct case. The court 
of appeals, however, reversed the summary judgment, concluding that the trial 
court had erred in considering extrinsic evidence to defeat GuideOne’s duty to 
defend its insured. 139 S.W.3d 384. The court of appeals further concluded that 
Jane Doe’s allegations were sufficient to invoke that duty, remanding the case 
to the trial court for a hearing only on costs and attorney’s fees. Id. 
at 390-91. GuideOne petitioned this Court for review.
 
II
GuideOne 
argues that it had no duty to defend the Church against the underlying claim of 
sexual misconduct because Evans left his job as a youth minister before the 
policy’s effective date. Because Jane Doe’s allegations against the Church 
involved Evans’ conduct while a youth minister, GuideOne suggests, that 
extrinsic evidence of when that relationship ended establishes no coverage 
existed for Evans’ acts during the policy period. Recognizing the eight-corners 
rule as an impediment to its argument, however, GuideOne contends a number of 
reasons support its proposition that extrinsic evidence regarding Evans’ 
employment status be considered as an exception to the rule.     

First, 
GuideOne argues that an exception should apply because the extrinsic evidence 
here was primarily relevant to the issue of coverage, rather than the merits of 
the plaintiff’s underlying claim. Alternatively, GuideOne argues that extrinsic 
evidence is needed to supplement the plaintiff’s allegations because those 
allegations alone are insufficient to determine coverage or the duty to defend. 
Finally, GuideOne submits that should the Court conclude that the employment 
evidence is relevant both to coverage and liability, an exception to the 
eight-corners rule should nevertheless be recognized for this type of “mixed” or 
“overlapping” extrinsic evidence.
Under the 
eight-corners or complaint-allegation rule, an insurer’s duty to defend is 
determined by the third-party plaintiff’s pleadings, considered in light of the 
policy provisions, without regard to the truth or falsity of those allegations. 
Argonaut Sw. Ins. Co. v. Maupin, 500 S.W.2d 633, 635 (Tex. 1973); 
Heyden Newport Chem. Corp. v. S. Gen. Ins. Co., 387 S.W.2d 22, 24 (Tex. 
1965). The rule takes its name from the fact that only two documents are 
ordinarily relevant to the determination of the duty to defend: the policy and 
the pleadings of the third-party claimant. King v. Dallas Fire Ins. Co., 
85 S.W.3d 185, 187 (Tex. 2002). Facts outside the pleadings, even those easily 
ascertained, are ordinarily not material to the determination and allegations 
against the insured are liberally construed in favor of coverage. Nat’l Union 
Fire Ins. Co. v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 
1997). 
Although this 
Court has never expressly recognized an exception to the eight-corners rule, 
other courts have.[1] Generally, these courts have drawn a 
very narrow exception, permitting the use of extrinsic evidence only when 
relevant to an independent and discrete coverage issue, not touching on the 
merits of the underlying third-party claim.[2] Recently, the Fifth Circuit observed 
that if this Court were to recognize an exception to the eight-corners rule, it 
would likely do so under similar circumstances, such as: “when it is initially 
impossible to discern whether coverage is potentially implicated and when 
the extrinsic evidence goes solely to a fundamental issue of coverage which does 
not overlap with the merits of or engage the truth or falsity of any facts 
alleged in the underlying case.” Northfield Ins. Co. v. Loving Home Care, 
Inc., 363 F.3d 523, 531 (5th Cir. 2004) (emphasis in original).
GuideOne 
relies on extrinsic evidence that is relevant both to coverage and the merits 
and thus does not fit the above exception to the rule. Hence, GuideOne argues 
that we should broaden the exception to include this type of “mixed” or 
“overlapping” extrinsic evidence. But very little support exists for this 
position, and the Fifth Circuit Court of Appeals has previously rejected a 
similar use of overlapping facts for this purpose. In Gulf Chemical & 
Metallurgical Corp. v. Associated Metals & Minerals Corp., one of the 
plaintiffs in the underlying toxic-tort action alleged that one of the 
defendants, Gulf, was strictly liable because it had sold or shipped molyoxide. 
1 F.3d 365, 367 (5th Cir. 1993). The petition did not specifically state when 
Gulf had shipped molyoxide, but the petition did allege that the plaintiffs had 
suffered injures from exposure to the toxin between 1946 and 1990. Id. at 
368. Extrinsic evidence would have established that Gulf had not shipped any 
molyoxide until January 20, 1986, which was three days after the expiration of 
the insurance policy in question. Id. at 368, 370. Although the fact at 
issue concerned both the merits and coverage, the Fifth Circuit, applying Texas 
law, rejected the use of extrinsic evidence under these circumstances. 
Id. at 371. We likewise reject the use of overlapping evidence as an 
exception to the eight-corners rule because it poses a significant risk of 
undermining the insured’s ability to defend itself in the underlying litigation. 
See Ellen S. Pryor, Mapping the Changing Boundaries of the Duty to 
Defend in Texas, 31 Tex. Tech Law 
Rev. 869, 891-95 (2000) (discussing risks associated with using 
overlapping evidence as an exception to the eight-corners rule).[3]
Those courts 
that have recognized an exception to the eight-corners rule have done so under 
limited circumstances involving pure coverage questions. For example, in 
International Services Insurance Co. v. Boll, 392 S.W.2d 160 (Tex. Civ. 
App.–Houston 1965, writ ref’d n.r.e.), the insurer refused to defend its insured 
in an auto-collision case because of a policy endorsement that excluded coverage 
for “any claim arising from accidents which occur while any automobile is being 
operated by Roy Hamilton Boll.” The plaintiff’s petition alleged that the 
insured’s son was driving the insured’s car when the accident occurred, but did 
not otherwise identify the driver. After resolving the third-party claim, the 
insured sued his insurer to recover his defense costs. During this subsequent 
litigation, the parties stipulated that the insured’s only son, Roy Hamilton 
Boll, was driving the insured vehicle. The court of appeals concluded that the 
stipulation established the accident had not been covered and that the insurer 
had no duty to defend.
The extrinsic 
evidence in Boll, however, went strictly to the coverage issue. It did 
not contradict any allegation in the third-party claimant’s pleadings material 
to the merits of that underlying claim. In contrast, the extrinsic evidence here 
concerning Evans’ employment directly contradicts the plaintiff’s allegations 
that the Church employed Evans during the relevant coverage period, an 
allegation material, at least in part, to the merits of the third-party claim. 
Under the eight-corners rule, the allegation’s truth was not a matter for debate 
in a declaratory judgment action between insurer and insured.
Moreover, 
were we to recognize the exception urged here, we would by necessity conflate 
the insurer’s defense and indemnity duties without regard for the policy’s 
express terms. Although these duties are created by contract, they are rarely 
coextensive. See Utica Nat’l Ins. Co. of Texas v. Am. Indem. Co., 141 
S.W.3d 198, 203 (Tex. 2004) (observing that duty to defend and duty to indemnify 
are distinct and separate); Whatley v. City of Dallas, 758 S.W.2d 301, 
304 (Tex. App.–Dallas 1988, writ denied) (duty to defend is defined by the terms 
of the contract). The policy here obligated GuideOne to indemnify the Church in 
the event of a meritorious claim for sexual misconduct, but with respect to the 
duty to defend, the contract provided that GuideOne should “defend any suit 
brought against [the insured] seeking damages, even if the allegations of the 
suit are groundless, false or fraudulent . . . .” 
The policy 
thus defined the duty to defend more broadly than the duty to indemnify. This is 
often the case in this type of liability policy and is, in fact, the 
circumstances assumed to exist under the eight-corners rule. Because the 
respective duties differ in scope, they are invoked under different 
circumstances. Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 
821-22 (Tex. 1997). A plaintiff’s factual allegations that potentially support a 
covered claim is all that is needed to invoke the insured’s duty to defend, 
Heyden Newport Chemical Corp., 387 S.W.2d at 26; whereas, the facts 
actually established in the underlying suit control the duty to indemnify. 
Trinity Universal Ins. Co., 945 S.W.2d at 821. 
Jane Doe 
alleged that Evans sexually assaulted her during the policy period and was a 
youth minister at the Church at the time. As the court of appeals observed, the 
allegations were sufficient to trigger GuideOne’s duty to defend. 139 S.W.3d at 
389.
GuideOne 
contends that it should not have to defend because it knows that Evans 
was not in fact an employee of the Church during this period, but the duty to 
defend does not turn on the truth or falsity of the plaintiff’s allegations. One 
amicus argues, however, that it should because ignoring the truth invites 
fraudulent and even collusive pleadings. The amicus further suggests that we 
should adopt a true-facts exception to the eight-corners rule to prevent the 
rule’s recurring use as a tool for fraud. But the record before us does not 
suggest collusion or the existence of a pervasive problem in Texas with 
fraudulent allegations designed solely to create a duty to defend.
Under 
the present policy, GuideOne agreed to defend the Church against allegations of 
sexual misconduct potentially within coverage, even if the plaintiff’s 
allegations were false or fraudulent. Therefore if GuideOne knows these 
allegations to be untrue, its duty is to establish such facts in defense of its 
insured, rather than as an adversary in a declaratory judgment action. Heyden 
Newport Chemical Corp., 387 S.W.2d at 25 (observing that the duty to 
defend coverage protects policyholders against the expense of suits seeking 
damages). Application of the eight-corners rule here thus conforms with the 
parties contract, and accordingly we agree with the court of appeals that the 
circumstances of this case present no basis for an exception to that rule.
 
III
GuideOne also 
argues that Doe’s pleadings failed to invoke its duty to defend because her 
allegations did not sufficiently describe her bodily injury. The policy defined 
“bodily injury” to mean “bodily injury, sickness or disease sustained by a 
person, including death resulting from any of these at any time.”[4] GuideOne maintains it had no duty to 
defend because Doe’s pleadings sought damages for emotional and psychological 
injuries rather than “bodily injury.” 
The court of 
appeals disagreed, noting that Doe’s allegations of sexual assault, abuse, 
molestation and violation were sufficient. 139 S.W.3d at 390. Because the policy 
attributed no technical or special meaning to the term “bodily injury,” the 
court applied its ordinary and generally accepted meaning, concluding that 
bodily injury is commonly understood to be a consequence of sexual assault and 
abuse. Id. We agree.
Finally, 
GuideOne complains that the court of appeals erred in remanding the case to the 
trial court for determination of costs and attorneys’ fees because Doe did not 
herself file a declaratory judgment action and did not pray for attorneys’ fees 
in the proceedings below. Contrary to GuideOne’s argument, however, the Church 
asked in its second amended motion for summary judgment that the court not only 
grant its motion, but also conduct a hearing and award it attorneys’ fees. The 
Declaratory Judgments Act provides that in any proceeding under the Act “the 
court may award costs and reasonable and necessary attorney’s fees as are 
equitable and just.” Tex. Civ. Prac. 
& Rem. Code § 37.009. The reasonable and necessary requirements are 
questions of fact to be determined by the factfinder; the equitable and just 
requirements are questions of law for the trial court to decide. Bocquet v. 
Herring, 972 S.W.2d 19, 21 (Tex. 1998). The court of appeals therefore did 
not err in remanding the issue of attorneys’ fees and costs to the trial 
court.
* 
* * * *
Finding no 
error in the court of appeals’ judgment, we affirm.
 
 
____________________________________
David M. 
Medina
Justice
 
 
Opinion 
delivered:         June 30, 2006






[1] See generally, 1 Rowland H. Long, The Law of Liability 
Insurance § 5.02[2][b][ii] at 5-27 (2006) (“When the extrinsic facts 
relied on by the insurer are relevant to the issue of coverage, but do not 
affect the third party’s right of recovery, courts have held that the insurer 
may refuse to defend third-party actions even though the allegations in the 
complaint indicate coverage.”); 1 Allan 
D. Windt, Insurance Claims and Disputes § 4:4 Insurer’s refusal to 
defend based on existence of extrinsic facts (4th ed. 2001) (citing cases 
which recognize that insurer may use extrinsic evidence to explain or refute 
factual allegations that are immaterial or extraneous to the merits of the 
third-party’s claim but relate solely to the question of 
coverage).

[2] See, e.g., W. Heritage Ins. Co. v. River Entm’t, 
998 F.2d 311, 313 (5th Cir. 1993) ("However, when the petition does not 
contain sufficient facts to enable the court to determine if coverage exists, it 
is proper to look to extrinsic evidence in order to adequately address the 
issue."); Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, 
L.L.P., 267 F. Supp. 2d 601, 621-22 (E.D. Tex. 2003) (extrinsic evidence 
admissible in deciding the duty to defend where fundamental policy coverage 
questions can be resolved by readily determined facts that do not engage the 
truth or falsity of the allegations in the underlying petition, or overlap with 
the merits of the underlying suit); State Farm Fire & Cas. Co. v. 
Wade, 827 S.W.2d 448, 452-53 (Tex. App.-Corpus Christi 1992, writ denied) 
(concluding that extrinsic evidence could be admitted in deciding the duty to 
defend when the facts alleged are insufficient to determine coverage and "when 
doing so does not question the truth or falsity of any facts alleged in the 
underlying petition"); Gonzales v. Am. States Ins. Co., 628 S.W.2d 184, 
187 (Tex. App.-Corpus Christi 1982, no writ) (holding that facts extrinsic to 
the petition relating only to coverage, not liability, may be considered to 
determine a duty to defend, where such evidence does not contradict any 
allegation in the petition); Cook v. Ohio Cas. Ins. Co., 418 S.W.2d 712, 
715-16 (Tex. Civ. App.-Texarkana 1967, no writ) ("[T]he Supreme Court draws a 
distinction between cases in which the merit of the claim is the issue and those 
where the coverage of the insurance policy is in question. In the first instance 
the allegation of the petition controls, and in the second the known or 
ascertainable facts are to be allowed to prevail."); Int’l Serv. Ins. Co. v. 
Boll, 392 S.W.2d 158, 161 (Tex. Civ. App.-Houston 1965, writ 
ref’d n.r.e.) (considering extrinsic evidence of identity of driver of insured 
vehicle by stipulation to conclude no duty to defend or indemnify arose). 


[3] One amicus suggests that the Church here might have a 
coverage-related incentive to prove that Evans was at least apparently employed 
by the Church during GuideOne’s policy term in order to secure insurance 
coverage. This proof, once obtained by the third-party claimant through 
discovery, would undermine the insured’s defense to those claims. Similarly, the 
insurer might have a coverage-related incentive to develop proof that the 
third-party claim is based on criminal or intentional conduct to establish a 
policy exclusion.

[4] Although not relevant here, the sexual misconduct 
clause of the policy excluded sickness or disease from the definition, making 
the definition of “bodily injury” in this context somewhat circular.