**OKLAHOMA SURETY COMPANY,**
Plaintiff,

v.

James **WILLIAMS,** Rito Meza, The Estate of Patricio Cano and his Wrongful Death Beneficiaries, and Elba Puentes, claiming as common law spouse, individually and as representative of the Estate of Jose Moreno, Defendants.

No. EP–04–CA–00463 KC.

United States District Court,
W.D. Texas,
El Paso Division.

Dec. 20, 2006.

Mark C. Walker, Brown McCarroll LLP, El Paso, TX, for Plaintiff.

Michael J. Gopin, Paul Frederick Grajeda, Attorney at Law, Antonio V. Silva, Law Offices of Antonio V. Silva, El Paso, TX, Rahul Malhorta, The Malhorta Law Firm, Odessa, TX, Francisco Velasquez, Albuquerque, NM, for Defendants.

Seferino Lara, Socorro, TX, Pro se.

Rito Meza, El Paso, TX, Pro se.

## *ORDER*

CARDONE, District Judge.

On this date, the Court considered Plaintiff's "Motion to Withdraw Funds and for Declaratory Judgment" and Plaintiff's "Motion for Permanent Injunction Against Any Further Proceedings on Plaintiff Uninsured Motorist Coverage for These Claims" ("Motion for Permanent Injunction"). Having reviewed the record, Plaintiff's Motion to Withdraw Funds is **GRANTED** and Plaintiff's Motion for Permanent Injunction is **GRANTED.**

## I. BACKGROUND

The instant case involves an interpleader action filed by Plaintiff Oklahoma Surety Company ("Plaintiff") against Defendants James Williams ("Williams"), Rito Meza ("Meza"), Patricio Cano, Jr. (on whose behalf Bertha Alicia Cano brings the instant suit), and Elba Puentes ("Puentes").[1]

Plaintiff issued an insurance policy to Mimbela Construction Company ("Mimbela"), which policy provided uninsured motorist coverage.[2] Def., Elba Puentes'

---

1. Plaintiff initially included Seferino Lara as a defendant but later amended its complaint to dismiss him, as Plaintiff was unable to effectuate service. Pl.'s Mot. for Leave to File Second Am. Compl. ¶¶ 1–2.

2. Plaintiff, Defendant Bertha Alicia Cano, and Defendant Puentes have stipulated that, for purposes of the motions and responses thereto pending before this Court, the documents produced by Plaintiff and attached to its motions are authentic, not hearsay, and admissible. Agreed Stipulation on Admissibility ¶ 2.

Resps. to Pl.'s Mot. to Withdraw Funds and for Declaratory J. and for Permanent Inj., Ex. A ¶ 1 ("Puentes' Prop. Undisputed Facts"); Pl.'s Resp. to Puentes' Statement of Contested and Uncontested Material Facts 1 ("Pl.'s Resp. to Prop. Undisputed Facts"). Defendants Williams, Meza, Bertha Alicia Cano, and Puentes are claimants to this policy's proceeds. Puentes' Prop. Undisputed Facts ¶ 2; Pl.'s Resp. to Prop. Undisputed Facts 2.

On or about February 13, 2004, John Rios ("Rios"), Meza, Williams, Patricio Cano, Jr., Seferino Lara ("Lara"), and José Moreno ("Moreno") (on whose behalf Defendant Puentes defends the instant suit) met at Mimbela's headquarters at 6:00 a.m. in order to carpool to Holloman Air Force Base in New Mexico for a job. App. to Pl.'s Mot. to Withdraw Funds and for Declaratory J., Ex. A, 10:6–11:16 ("Meza Dep."). Meza and Williams testified that as a general rule, employees would meet at Mimbela's headquarters and Mimbela would provide transportation to a job site if the job site was located far away. *Id.* at 10:6–9, 11:23–12:5; App. to Pl.'s Mot. to Withdraw Funds and for Declaratory J., Ex. B, 13:3–16 ("Williams Dep."). On or about February 13, 2004, the company's van had broken down and Rios told the employees to ride in his pickup truck because Mimbela had authorized him to drive the pickup to the job site. Meza Dep. at 10:10–20, 20:3–6; Puentes' Prop. Undisputed Facts ¶ 3; Pl.'s Resp. to Prop. Undisputed Facts 2. They left at 6:00 a.m. Meza Dep. 11:15–22. Meza testified that they were supposed to be "on the clock" at 7:00 a.m. *Id.* at 11:20–22.

While on Highway 54 in New Mexico, Rios hit an unseen patch of ice and lost control of his truck. Puentes' Prop. Undisputed Facts ¶ 4; Pl.'s Resp. to Prop. Undisputed Facts 2. This resulted in a one-vehicle rollover accident. Puentes'

Prop. Undisputed Facts ¶ 4; Pl.'s Resp. to Prop. Undisputed Facts 2. As a result of this accident, Defendants Meza and Williams suffered various injuries. Puentes' Prop. Undisputed Facts ¶ 5; Pl.'s Resp. to Prop. Undisputed Facts 2. Moreno and Patricio Cano, Jr. were both ejected from the truck and died at the scene of the accident. Puentes' Prop. Undisputed Facts ¶ 5; Pl.'s Resp. to Prop. Undisputed Facts 2.

Faced with multiple adverse claims exceeding policy limits, Plaintiff filed a statutory interpleader action in federal court on December 14, 2004. Puentes' Prop. Undisputed Facts ¶ 6; Pl.'s Resp. to Prop. Undisputed Facts 2. Plaintiff believed and alleged that it had no interest in the policy proceeds, and further that one or more of the named Defendants had a right to all of the policy proceeds. Puentes' Prop. Undisputed Facts ¶ 7; Pl.'s Resp. to Prop. Undisputed Facts 2. Plaintiff also tendered the maximum amount of the policy proceeds, $300,000, to the Registry of the Court on or near January 6, 2005. Puentes' Prop. Undisputed Facts ¶ 6; Pl.'s Resp. to Prop. Undisputed Facts 2.

Plaintiff now asserts that upon conducting further discovery in this case, it has learned that Defendants would be barred from recovering anything against Rios, and are thus barred from recovering against Plaintiff under the exclusivity provisions of both the Texas and New Mexico Workers' Compensation Acts. Puentes' Prop. Undisputed Facts ¶ 7; Pl.'s Resp. to Prop. Undisputed Facts 2. Defendants assert that at the time Plaintiff filed the interpleader action, it knew that the Defendants were barred from recovery. Puentes' Prop. Undisputed Facts ¶ 7; Pl.'s Resp. to Prop. Undisputed Facts 2. Thus, Plaintiff cannot now assert any statutory bar to recovery. Puentes' Prop. Undisput-

ed Facts ¶ 7; Pl.'s Resp. to Prop. Undisputed Facts 2.

At the time of this accident, Mimbela possessed workers' compensation coverage for all of its employees. Puentes' Prop. Undisputed Facts ¶ 8; Pl.'s Resp. to Prop. Undisputed Facts 2. After the accident, Bertha Alicia Cano, Lara, Meza, and Williams filed workers' compensation claims. App. to Pl.'s Mot. to Withdraw Funds and for Declaratory J., Ex. C, 17:9–20:8 ("Bertha Alicia Cano Dep."); Meza Dep. 16:23–25; Williams Dep. 21:13–27:19. Initially, the Texas Workers' Compensation Commission denied these claims. Bertha Alicia Cano Dep. 18:3–19:18; Meza Dep. at 17:1–2; Williams Dep. at 25:5–27:19. Later, however, the Texas Workers' Compensation Commission provided Bertha Alicia Cano, Lara, Meza, and Williams with workers' compensation benefits, including medical care, funeral expenses, and other benefits where applicable. Bertha Alicia Cano Dep. at 19:19–23:7; Meza Dep. 17:3–21; Williams Dep. 25:5–27:19. Around this time, Bertha Alicia Cano, Lara, Meza, and Williams filled out Benefit Dispute Agreement forms indicating that the employees involved in the accident sustained compensable injuries on February 13, 2004 and that the injured employees had disabilities from February 14, 2004 through February 29, 2004 as a result of the accident. Bertha Alicia Cano Dep. at 18:13–19:20:8; Meza Dep. at Ex. 3; Williams Dep. at Ex. 25.

Following the accident, Defendant Puentes also filed claims with the Texas Department of Insurance, Division of Workers' Compensation ("Texas DWC"). Puentes' Prop. Undisputed Facts ¶ 9, Ex. B6; Pl.'s Resp. to Prop. Undisputed Facts 2. The Texas DWC denied all of her claims, finding that Moreno was not injured while in the course and scope of his employment for Mimbela. Puentes' Prop. Undisputed Facts ¶ 9, Ex. B6; Pl.'s Resp.

to Prop. Undisputed Facts 2. The Texas DWC noted that Texas Labor Code section 401.011(12) provides that the term "course and scope of employment" does not include transportation to and from the place of employment, and that Moreno was injured while traveling to his place of employment. Puentes' Prop. Undisputed Facts ¶ 9, Ex. B6; Pl.'s Resp. to Prop. Undisputed Facts 2. Further, the Texas DWC noted that Mimbela had not furnished the transportation as part of Moreno's employment contract, that the means of transportation was not under the control of Mimbela, that Moreno was not directed to travel from one place to another, and finally that Moreno was not furthering an interest of the employer at the time of the accident. Puentes' Prop. Undisputed Facts ¶ 9, Ex. B6; Pl.'s Resp. to Prop. Undisputed Facts 2.

Mario Rodriguez, Sr. ("Rodriguez"), Operations Manager for Mimbela, recorded a statement six (6) days after the accident, disclaiming any liability for the accident on the part of Mimbela. Puentes' Prop. Undisputed Facts ¶ 9; Pl.'s Resp. to Prop. Undisputed Facts 2. Specifically, Rodriguez stated that (1) the employees involved in the accident were not performing any work or service for Mimbela during their travel, (2) the employees were not on-call, (3) Mimbela did not direct employees to start their travel from its office, (4) there was no reason for the employees to go to the office before leaving for work, and (5) the employees were not paid an hourly rate for their travel time to work. Puentes' Prop. Undisputed Facts ¶ 9; Def., Elba Puentes' Resps. to Pl.'s Mot. to Withdraw Funds and for Declaratory J. and for Permanent Inj., Ex. 1 at OSC 128–31; Pl.'s Resp. to Prop. Undisputed Facts 2. In a later statement executed nearly two (2) years after the accident, Rodriguez clarified that the person who interviewed him for his first recorded statement never

asked him about whether Rios supplied his truck, with company permission, to transport the crew to Alamogordo. Supp.App. to Pl.'s Mot. to Withdraw Funds and for Declaratory J., Ex. H at 2. However, Rodriguez did state that the company agreed to pay for Rios' gas for the trip. *Id.* Rodriguez also stated that, though the issue of workers' compensation coverage was highly disputed, all parties eventually agreed that workers' compensation coverage applied to the men involved in the accident. *Id.* at 3.

John Mimbela, the owner and president of Mimbela, stated that Mimbela would often provide vans or other vehicles to transport employees to a work site. App. to Pl.'s Mot. to Withdraw Funds and for Declaratory J., Ex. E at 2. On February 13, 2004, he stated that Mimbela did not have a vehicle available for the employees, so Mimbela gave Rios permission to transport the workers to the job site in his truck. *Id.* John Mimbela further stated that although Texas Mutual Insurance Company initially denied all claims for workers' compensation benefits following the accident, it later agreed that the accident was, in fact, covered by workers' compensation. *Id.*

## II. DISCUSSION

### A. Standards

#### 1. Declaratory judgment

■ The Federal Declaratory Judgment Act provides that a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.S. § 2201(a) (2006); *Sherwin–Williams Co. v. Holmes County,* 343 F.3d 383, 389 (5th Cir.2003). A district court is not compelled to exercise this jurisdiction. *Wilton v. Seven Falls Co.,* 515 U.S. 277, 287, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). Rather, the Supreme Court has characterized the Federal Declaratory Judgment Act as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 287, 115 S.Ct. 2137; *Pub. Serv. Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 241, 73 S.Ct. 236, 97 L.Ed. 291 (1952); *Green v. Mansour,* 474 U.S. 64, 72, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985).

■ When considering whether or not to issue a declaratory judgment, a district court must consider three questions. *Orix Credit Alliance, Inc. v. Wolfe,* 212 F.3d 891, 895 (5th Cir.2000). First, the court considers whether the declaratory action is justiciable, that is whether an "actual controversy" exists between the parties. *Id.* A controversy must be "definite and concrete, touching the legal relations of parties having adverse legal interests," rather than "an opinion advising what the law would be upon a hypothetical state of facts." *Rowan Cos. v. Griffin,* 876 F.2d 26, 27–28 (5th Cir.1989) (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937)). Second, the court considers whether it has the authority to grant declaratory relief. *Id.* Finally, the court considers whether or not to exercise its broad discretion to decide or dismiss the declaratory judgment action. *Id.*

#### 2. Rule 12(b)(1)

Challenges to standing can be brought pursuant to Rule 12(b)(1). *See Cramer v. Skinner,* 931 F.2d 1020, 1025 (5th Cir.1991) (discussing litigant challenging standing on Rule 12(b) motion). A motion to dismiss pursuant to Rule 12(b)(1) must be considered before any other challenge, because a court must have jurisdiction before determining the validity of a claim. *Moran v. Kingdom of Saudi Arabia,* 27 F.3d 169, 172 (5th Cir.1994). In ruling upon such motion, a district court is free to weigh the evidence and satisfy itself as to its power

over the case. *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.,* 957 F.2d 178, 181 (5th Cir.1992). In making this ruling, the district court may rely upon: (1) the complaint alone, (2) the complaint supplemented by undisputed facts in the record, or (3) the complaint supplemented by undisputed facts in addition to the court's resolution of disputed facts. *Barrera–Montenegro v. United States and Drug Enforcement Admin.,* 74 F.3d 657, 659 (5th Cir.1996).

The standard of reviewing a motion to dismiss pursuant to 12(b)(1) depends upon whether the defendant makes a facial or factual challenge to the plaintiff's complaint. *Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir.1981). When the defendant makes a facial attack by the mere filing of a Rule 12(b)(1) motion, the trial court looks to the sufficiency of the plaintiff's allegations, which are presumed to be true. *Id.* When the defendant makes a factual attack by providing affidavits, testimony, and other evidence challenging the court's jurisdiction, the plaintiff must submit facts in support of the court's jurisdiction and thereafter bear the burden of proving that the trial court has subject matter jurisdiction. *Middle S. Energy, Inc. v. City of New Orleans,* 800 F.2d 488, 490 (5th Cir.1986).

### 3. Summary Judgment

A summary judgment movant must show by affidavit or other evidence that there is no genuine issue regarding any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990). Once the movant carries the initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Houston,* 922 F.2d 1183, 1187 (5th Cir.1991).

Summary judgment is required if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 4, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### 4. Permanent injunction

The federal rules relating to interpleader actions provide that:

> [A] district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any state or United States Court affecting the property, instrument, or obligation involved in the interpleader action until further order of the court.... Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

28 U.S.C.S. § 2361 (2006).

In order for a court to grant a permanent injunction, the plaintiff must

show four elements: (1) actual success on the merits of the substantive claims, (2) a substantial threat that it will suffer irreparable injury if the injunction is denied, (3) that the threatened injury outweighs any damage the injunction might cause the non-moving party, and (4) that the injunction will not disserve the public interest. *Dresser–Rand Co. v. Virtual Automation, Inc.* 361 F.3d 831, 847 (5th Cir.2004) (holding that the standard for a permanent injunction is essentially the same as for a preliminary injunction, with the exception that the plaintiff must show actual success on the merits rather than a mere likelihood of success); *Reliant Energy Servs. v. Enron Can. Corp.*, 349 F.3d 816, 826 n. 7 (5th Cir.2003) (citing *Hoover v. Morales*, 164 F.3d 221, 224 (5th Cir.1998)).

## B. Motion to Withdraw Funds and for Declaratory Judgment

Plaintiff asks this Court to allow it to withdraw the funds it tendered into the registry of Court. Plaintiff argues that in order for Defendant Bertha Alicia Cano to collect the money tendered into the registry of the Court, Rios would need to be found legally liable to her. Mot. to Withdraw Funds and for Declaratory J. 4. However, Rios cannot be found legally liable to her because under Texas and New Mexico law, any claims against him are barred by the exclusivity provisions of the workers' compensation laws which bar claims against a co-employee absent some evidence that the accident was caused intentionally or through gross negligence. *Id.* Plaintiff also contests Defendant Puentes' standing to bring the instant suit, as Defendant Puentes was not married to Moreno and did not represent to others that they were married. Pl.'s Mot. to Withdraw Funds and for Declaratory J. 6–7.

■ Though she does not deny executing a Benefit Dispute Agreement and receiving workers' compensation benefits, Defendant Bertha Alicia Cano argues that she is entitled to assert alternative claims for relief and hence pursues the insurance proceeds. Def., The Estate of Patricio Cano, Jr. and His Wrongful Death Beneficiaries', Resp. to Pl.'s Mot. to Withdraw Funds and For Declaratory J. ¶ XI ("Bertha Alicia Cano's Resp."). Defendant Bertha Alicia Cano asserts that genuine issues of material fact exist with respect to whether Defendants were acting within the scope and course of their employment at the time of the accident.[3] *Id.* ¶ VI. Defendant Bertha Alicia Cano argues that the issue of whether the employees were acting within the course and scope of their employment was brought before the Texas Workers' Compensation Commission Appeals Panel, it was hotly contested, and

3. This Court notes that in her response, Defendant Bertha Alicia Cano details the history of a claim filed by Serefino Lara but provides absolutely no citations to the record in order to support this history. The district court has no "duty to survey the entire record in search of evidence to support a non-movant's opposition." *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir.1996) (stating the above in the context of motions for summary judgment). Rather, it is the non-movant's burden to designate specific facts in the record that create genuine issues precluding summary judgment. *Id.; see also Dethrow v. Parkland Health Hosp. Sys.*, 2002 WL 413905, at *1–2, 2002 U.S. Dist. LEXIS 4182, at *5 (N.D.Tex. Mar. 11, 2002) ("This court is not required to 'comb the record' in search of a genuine issue of material fact. 'Rule 56 does not impose a duty on the district court to sift through the record in search of evidence to support a party's opposition to summary judgment.' [citations omitted] 'Rule 56, therefore, saddles the non-movant with the duty to 'designate' the specific facts in the record that create genuine issues precluding summary judgment, and does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition.' ")

that only Defendant Lara was eventually found to have been within the course and scope of his employment. *Id.* ¶¶ VII–VIII. Moreover, Defendant Bertha Alicia Cano states that she was not a party to the proceedings against Lara and thus had no opportunity to cross-examine witnesses or present evidence in support of her case. *Id.* ¶ VIII. Defendant Bertha Alicia Cano points to testimony of Rodriquez, indicating that at the time of the accident, the employees were not performing any work or service for Mimbela. *Id.* ¶ VII.

Defendants the minor children of Patricio Cano, Jr. argue that to the extent the Benefit Dispute Agreement would bar them from recovering insurance proceeds, the Benefit Dispute Agreement is not binding upon them because it lists only Defendant Bertha Alicia Cano as the beneficiary and there is no indication that she endorsed the agreement on behalf of Defendants the minor children of Patricio Cano, Jr. in any capacity. *Id.* ¶ X.

Defendant Puentes' argues that she has standing to bring the instant suit because she held herself out as being married to Moreno, and thus has a valid common law marriage in Texas.[4] Puentes' Prop. Undisputed Facts ¶¶ 13–15. Defendant Puentes admits that she lived with Moreno in Sunland Park, New Mexico. *Id.* ¶ 14. Defendant Puentes' further argues that Plaintiff is judicially estopped from prosecuting the instant suit because it knew or should have known the facts underlying its current motions, and yet waited one year and three months before filing the motions. Def., Elba Puentes' Resps. to Pl.'s Mot. to Withdraw Funds and for Declaratory J. and for Permanent Inj. at 4–5. Finally, Plaintiff argues that Moreno was not within the course and scope of his employment when he was injured, and is

thus not barred by the exclusivity provisions of workers' compensation laws. *Id.* at 5–7.

■ As an initial matter, when parties file a declaratory judgment action and then request the court to summarily grant declaratory judgment in their favor, parties typically file a motion for summary judgment requesting declaratory relief. The instant motion is ambiguous because Plaintiff has titled it a Motion to Withdraw Funds and for Declaratory Judgment without providing the Court with an appropriate standard for considering such motion. Both responding Defendants have treated Plaintiff's motion as a motion for summary judgment, even though Plaintiff denies ever having filed a motion for summary judgment. Though Plaintiff denies ever having filed a motion for summary judgment, it asks this Court to grant a judgment in its favor without trial. As such, this Court will construe the motion as one for summary judgment with respect to the issue of the applicability of the exclusivity provisions of workers' compensation laws. This Court will construe the motion as one to dismiss pursuant to Rule 12(b)(1) with respect to the issue of Defendant Elba Puentes' standing.

### 1. Exclusivity Provisions of Workers' Compensation Laws

■ The Texas Labor Code provides that: "Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee." Tex. Lab.Code Ann. § 408.001(a) (Vernon 2006). In other words, once an

---

**4.** The Court considers this argument implicit because although Defendant Puentes does not discuss the issue of standing in the substance

of her response, she does discuss it in her "Statement of Contested Material Facts" attached to her response as Exhibit A.

employee accepts workers' compensation benefits, he or she is then absolutely barred from suit against the employer or his agents for negligence. *Tri–Coastal Contractors, Inc. v. Hartford Underwriters Ins. Co.*, 981 S.W.2d 861, 864 (Tex.App. 1998). The only exception to this rule, which would allow an employee to seek remedies beyond workers' compensation insurance, exists when a defendant engages in grossly negligent, willful, or intentional conduct. TEX. CONST. art. XVI, § 26 (2006). New Mexico follows analogous laws with respect to workers' compensation insurance. N.M. STAT. ANN. § 52–1–6 (LexisNexis 2006) ("The Workers' Compensation Act [52–1–1 NMSA 1978] provides exclusive remedies. No cause of action outside the Workers' Compensation Act shall be brought by an employee or dependent against the employer or his representative, including the insurer ... for any matter relating to the occurrence of or payment for any injury or death covered by the Workers' Compensation Act."); *Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. 272, 34 P.3d 1148, 1152–53 (2001) (allowing workers to pursue remedies beyond workers' compensation insurance in cases involving intoxication, willfulness, or intentional self-infliction).

The Texas court of appeals has addressed this issue on two occasions. First, in *Tri–Coastal Contractors, Inc. v. Hartford Underwriters Insurance Co.*, 981 S.W.2d 861 (Tex.App.1998), the court addressed this issue in the context of a dispute between an insurance carrier and an employer. *Tri–Coastal Contractors, Inc.*, 981 S.W.2d at 862. Hartford Underwriters Insurance Company had issued an insurance policy to Tri–Coastal Contractors, Inc., which policy provided workers' compensation benefits in one part and employer's liability insurance in another. *Id.* In executing its obligations under this policy, Hartford defended Tri–Coastal in a suit brought by a Tri–Coastal employee for an

on-the-job injury. *Id.* Eventually, Hartford provided workers' compensation benefits to the injured employee. *Id.* Hartford then filed a declaratory judgment action against Tri–Coastal, asking the district court to declare that Hartford owed no further coverage to Tri–Coastal. *Id.* While the court held that to make such a declaration would violate the eight-corners rule that courts are bound by in determining an insurer's duty to defend, in that it would require examination of the merits of an external lawsuit, it also held that the employee could not sue Tri–Coastal for negligence if the employee collected workers' compensation benefits for the same injury. *Id.* at 864.

The Texas court of appeals took a similar position in *Dickson v. Silva*, 880 S.W.2d 785 (Tex.App.1993), though this decision was governed by Texas Revised Civil Statutes Annotation, article 8306, which statute is no longer in effect. In *Dickson*, an injured worker applied for and received workers' compensation benefits. *Dickson*, 880 S.W.2d at 786. He then sued the employer for negligence, arguing, among other things, that he had not been within the course and scope of his employment at the time the accident occurred, and thus that the Workers' Compensation Act was not his exclusive remedy. *Id.* The court noted that to recover under former article 8306 of the Texas Revised Civil Statutes, an employee must have been injured in the course of employment. *Id.* After determining that *Dickson* was clearly within the course and scope of employment while injured, the court of appeals held that article 8306 barred him from pursuing a lawsuit against his employer for negligence. *Id.* at 788.

 In the instant case, Defendants Williams, Meza, and Bertha Alicia Cano and her minor children received workers' compensation benefits as a result of injuries sustained by the workers at issue on

February 13, 2004.[5] Bertha Alicia Cano Dep. at 19:19–23:7; Meza Dep. 17:3–21; Williams Dep. 25:5–27:19. As such, they are barred from pursuing further relief against the employer and his agents, including Rios and Plaintiff. TEX. LAB.CODE ANN. § 408.001(a); *Tri–Coastal Contractors, Inc.*, 981 S.W.2d at 864. Moreover, though the Court in *Dickson* conducted its own analysis of whether the injured employee was acting within the course and scope of his employment, that case was decided under a statute which is no longer in effect. *Dickson,* 880 S.W.2d at 786 n. 1. *Tri–Coastal Contractors, Inc.*, on the other hand, was decided under the statute currently in effect and controls the outcome of this case. *Tri–Coastal Contractors, Inc.*, 981 S.W.2d at 864.

▆ Though Defendants the minor children of Patricio Cano, Jr. argue that they were not bound by the Benefit Dispute Agreement signed by Defendant Bertha Alicia Cano, Defendants cite scarce law in support of this assertion and fail to address the fact that Defendant Bertha Alicia Cano initially filed for workers' compensation benefits on their behalf, as well as her own, and has been paid both on their behalf and her own. Supp.App. to Pl.'s Mot. to Withdraw Funds and for Declaratory J. Exs. C at Ex. 13, G. Moreover, an action for personal injuries brought by survivors of the decedent is derivative to the rights of the decedent, and any defenses that could have been raised against a claim by the injured person may also be raised against the person's heirs and estate. *Russell v. Ingersoll–Rand Co.*, 841 S.W.2d 343, 344–45 (Tex.1992). In this case, workers' compensation benefits have already been paid to the beneficiaries of Patricio Cano, Jr., and thus the Plaintiff can use the exclusivity provisions of the workers' compensation laws as a defense.

▆ In light of the foregoing, Plaintiff's Motion to Withdraw Funds and for Declaratory Judgment is granted as to Defendants Bertha Alicia Cano, Meza, and Williams.[6]

5. Moreover, Defendant Bertha Alicia Cano agreed that Patricio Cano, Jr. was within the scope and course of employment when she executed a Benefit Dispute Agreement agreeing that he had sustained a "compensable injury" on February 13, 2004, which resulted in his death. Bertha Alicia Cano's Resp., Ex. E. The definition of "compensable injury" means "an injury that arises out of and in the course and scope of employment for which compensation is payable under [The Workers' Compensation Act]." *Cont'l Cas. Co. v. Williamson,* 971 S.W.2d 108, 110 (Tex.App.1998). In other words, "[t]o be 'compensable,' the injury must arise out of and in the scope and course of employment for which compensation is payable." *Zurich Am. Ins. Co. v. Gill,* 173 S.W.3d 878, 882 (Tex.App.2005). Therefore, when Defendant Bertha Alicia Cano agreed that Patricio Cano, Jr. had suffered a compensable injury, she agreed that he was acting within the course and scope of his employment when injured.

6. To the extent Defendants argue that Plaintiff is barred from withdrawing funds based on the principle of *res judicata,* such argument is without merit. The doctrine of *res judicata* " 'treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same 'claim' or 'cause of action.' [It] incorporates the doctrines of merger and bar, thereby extending the effect of a judgment to the litigation of all issues relevant to the same claim between the same parties, whether or not those issues were raised at trial.' " *Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 328 n. 28 (5th Cir. 2006). This doctrine is subject to two limitations, namely that: (1) it may be applied only where the position of the party is clearly inconsistent with a previous position, and (2) where the party convinced the court to accept the previous position. *Id.* at 328. In the instant case, the Plaintiff has never convinced this Court to accept the initial position it took in filing its interpleader action. *Cf. Ergo Sci., Inc. v. Martin,* 73 F.3d 595, 598–99 (5th Cir. 1996) (holding insurance company was barred from withdrawing interpleader funds after it made oral statements to the court during a pretrial hearing disclaiming any in-

## 2. Standing

 Moreno, a resident of New Mexico, received no workers' compensation benefits and thus is not barred from pursuing alternative remedies, such as an action for negligence. N.M. Stat. Ann. § 52–1–6; *Delgado,* 34 P.3d at 1152–53 (N.M. 2001). In New Mexico, an action for wrongful death may be brought "by and in the name of the personal representative of the deceased person." N.M. Stat. Ann. § 41–2–3 (LexisNexis 2006). The proceeds of any such judgment are distributed to the "statutory beneficiaries," which include the surviving spouse, children, grandchildren, parents, and siblings. *Id.* While a "personal representative" in the context of a wrongful death action "is a mere nominal party," and does not necessarily need to have an interest in the case him or herself, the personal representative must bring suit on behalf of the statutory beneficiaries, rather than on behalf of the estate. *Baca v. Baca,* 71 N.M. 468, 379 P.2d 765, 769–70 (1963). In addition, in order to be considered someone's spouse in New Mexico (and thus a potential statutory beneficiary for wrongful death purposes), a party must have entered into a legal state of marriage. *Hartford Ins. Co. v. Cline,* 140 N.M. 16, 139 P.3d 176, 181 (2006) (citing *Hazelwood v. Hazelwood,* 89 N.M. 659, 556 P.2d 345, 347 (1976)).

In the instant case, as indicated by the caption and her arguments, Defendant Puentes brings suit "claiming as common law spouse, individually, and as representative of the estate of Jose Moreno." New Mexico, where Defendant Puentes resided with Moreno, does not recognize common law marriages and thus Defendant Puentes has failed to show how she can bring the instant suit "claiming as common law spouse." [7] Moreover, as discussed in *Baca,* Defendant Puentes' could possibly act as personal representative and bring suit on behalf of the statutory beneficiaries (which appear not to include her), but she cannot bring suit on behalf of the estate. *Baca,* 379 P.2d at 769–70. Accordingly, Defendant Puentes' has failed to show that she has standing to bring the instant suit.

In light of the foregoing, this Court will dismiss the claims against Defendant Puentes without prejudice to re-filing after she has proven, in the appropriate court, that she has standing to pursue the case.[8] Plaintiff's Motion to Withdraw Funds and for Declaratory Judgment is granted as to Defendant Puentes.

## C. Motion for Permanent Injunction

 Plaintiff also requests an injunction to bar Defendants from pursuing any claims in state or federal court against the uninsured motorist proceeds which are the subject of this interpleader action. Mot. for Permanent Inj. ¶ 1. Defendants Puentes' and Bertha Alicia Cano reiterate their arguments above in support of their positions that this Court should not issue

---

terest in the funds). Thus, the doctrine of *res judicata* is inapplicable to the instant case.

**7.** Moreover, even if this case were governed by Texas law as both Plaintiff and Defendant Puentes appear to argue at one point, one requirement for an informal marriage in Texas is that a man and woman live together in Texas. Tex. Fam.Code Ann. § 2.401(a)(2) (Vernon 2006). As Defendant Puentes and Moreno lived in New Mexico, Defendant Puentes has failed to show how she could be considered the common law spouse of Moreno in

Texas, and further how she has the requisite relationship with Moreno to bring the instant suit. *See Shepherd v. Ledford,* 962 S.W.2d 28, at 35 (Tex.1998) (finding that a woman lacked standing to sue under the Wrongful Death Act after she failed to prove that she was the common-law surviving spouse).

**8.** Defendant Puentes admits that she has never attempted to litigate the issue of Moreno's estate in either Texas or New Mexico. Puentes' Prop. Undisputed Facts ¶ 15.

the injunction. Def., Elba Puentes' Resps. to Pl.'s Mot. to Withdraw Funds and for Declaratory J. and for Permanent Inj. 7; Def. Bertha Alicia Cano's Resp. ¶¶ 1–13.

As stated above, Plaintiff has shown actual success on the merits of its claim. Moreover, this Court finds that: (1) Plaintiff would suffer irreparable injury if an injunction is denied because it would have to expend countless time and resources defending such suits, (2) the threatened injury to the Plaintiff outweighs any injury to the Defendants, and (3) an injunction in this case will not disserve the public interest. Accordingly, Plaintiff's Motion for a Permanent Injunction is granted.

## III. CONCLUSION

In light of the foregoing, Plaintiff's Motion to Withdraw Funds (Doc. No. 48) is **GRANTED.** Plaintiff's Motion for Injunction (Doc. No. 55) is **GRANTED.** Defendants are **HEREBY ENJOINED** from pursuing any claims in state or federal court against the uninsured motorist proceeds which are the subject of this interpleader action, subject to this Court's statements above regarding Defendant Puentes' standing.

The clerk shall close the case.

**SO ORDERED.**